17-1626, Keith versus Derek Balark. Okay, would the lawyers who are going to argue the case please approach the bench and introduce yourself to the court. I'm Joseph Beddock with the State Appellate Defender's Office. On behalf of the appellate, Derek Balark. I'm sorry, I didn't hear you say your name. You do? Joseph Beddock with the State Appellate Defender's Office. Try to speak up a little louder. Good morning, judges, justices. My name is David Iskowich, and I'm with the Cook County State Attorney's Office. Okay. Do you want some time for rebuttal? Yes, Your Honor. How much? About three minutes or so. Okay. All right, let's proceed. Good morning, Your Honors. As I said, I'm Joseph Beddock with the State Appellate Defender's Office. You know, that's not a microphone. It doesn't make your voice louder. It just records it. I just want you to understand that. Yes, Your Honor. I intend to address my first issue this morning, but if you have any questions about my second issue, I'm more than happy to answer those as well. Derek Ballard was arrested after one of the arresting officers, Officer Ferraris, allegedly saw him in possession of a concealed firearm. This arrest was without probable cause because being in possession of a concealed firearm is not illegal in itself. How about having the firearm in the car open and obvious? Yes. So the Concealed Carry Act defines a concealed firearm as you just mentioned, a loaded or unloaded handgun carried on or about a person, completely or mostly concealed from view of the public, or on or about a person within a vehicle. And so we know then that the completely or mostly concealed from view of the public, that that language only applies to firearms that are being carried on the street. Otherwise, it would render that whole second clause that or on or about a person. So are you contending that anyone could have a firearm in a car on his lap or out in the open? Yes, I am, Your Honor. Could I ask you something then? We asked you to do a supplemental brief and specifically to address the unlawful use of a weapon statute and also the definitional statute, but the state basically went into, in their brief, the circumstances within which a licensee, what this permit allows them to do. And I don't know if you want to try to address that now, because you didn't address it in your supplemental brief. But what the gun statute says, first of all, it says that these exceptions are for, they don't apply to or affect transportation of weapons. So first of all, I think that the statute is about the ability to transport a gun. It's not about using guns in cars. But what it also says, this exception that we asked you to look at, is are carried or possessed in accordance with the Firearm Concealed Carry Act by a person, in accordance with, that's the operative language, who's been issued a currently valid license. So the state, in their supplemental brief, talked about the section that what concealed carry permit actually allows you to do. And you didn't really talk about that. Are you referring to 66-10C? Yes, exactly. And it says a license shall permit the licensee to carry a loaded or unloaded concealed firearm, fully concealed or partially, on or about a person, and keep or carry a loaded or unloaded concealed firearm on or about his person within a vehicle. Correct, Your Honor. But I think so then, as you mentioned, in that first part of the definition, it does include fully concealed or partially concealed. The second part of that definition does not say anything about, I mean, it does say a concealed firearm. But I think the state is incorrect, too, that they say that the definition in 66-5 does not apply to section 66-10. But the definition of a concealed firearm. Well, it does. But that's not really what I'm asking you. Correct. I'm asking you to explain how you could argue that Illinois has an open carry policy in cars when the permit only allows you to have a concealed firearm on or about your person within a vehicle. That's the operative language. That's what a permit permits. So how do you explain that the legislature has given open carry to citizens in vehicles? Well, I think it has to do with the fact that a concealed firearm, I mean, I think that the use of the term concealed there, I think it's important to keep in mind that it's a term of art. And I do think that based on the definition in 66-5, that it does somewhat conflict with the normal, everyday understanding of the use of the word concealed. But as we know from 66-5, that concealed firearm in this case, it doesn't mean that it's not visible from view. It just means in the context of a vehicle, that means that it is on or about the person. And as I said otherwise, there would have been, if the legislator intended for all firearms, even those carried within a vehicle, to be completely or mostly concealed from view, they would have said just that. Are you actually saying that the legislature intended open carry in cars in Illinois? I mean, I wouldn't classify it as open carry. What does concealed mean? A concealed firearm in this case means a firearm that is carried on or about a person within a vehicle. But not concealed? That definition of concealed encompasses on or about a person within a vehicle. So you're saying that it doesn't really have to be concealed as long as it's in a car? Correct, Your Honor. Well, you cited a number of cases. I mean, there are states that have open carry, aren't there, like in Texas, for example? Yes, Your Honor, I believe so. And in those states, you're allowed to have guns in cars, you're allowed to have them on. You can have your rifles on a truck. You can have a gun, you know, walking around on the street. Are you really suggesting that Illinois has open carry in vehicles? Well, I don't think that it's just – I don't think that it's subject to no requirements. I think that, as I pointed out in my brief, the language on or about a person, it has a very specific meaning under Illinois law. So it would have to be readily accessible to the person. Okay, but it doesn't have to be concealed. And that word concealed is absolutely meaningless. I believe that it was just – in the context of 66-10C, you mean the use of concealed there? Don't you have to read statutes together? Yes, you do, Your Honor, but – Do we ever want an absurd result? No, we don't, Your Honor. So is it absurd to say that in public you have to have a gun concealed, but if you're in a car, the legislature intended open carry? No, I don't think that's absurd because, as I said, I mean that is clearly what the legislator intended based on the fact that they include that second clause there, that or on or about a person. But not within the language that says a license shall permit the licensee to keep or carry loaded or unloaded concealed firearm on or about the person within a vehicle. They have actually created a definition, and it includes all of these words, concealed firearm on or about the person within a vehicle. Correct, Your Honor, but it doesn't include – so in 66-10C, there's two things that it allows you to do. And the first thing is carry a loaded or unloaded concealed firearm, fully concealed or partially concealed on or about his own person. Yeah, and you realize that's for on the street, don't you? Yes, I do. And so I'm saying that if they had intended for the requirements for a vehicle to be exactly the same as on the street, they just would have tracked that exact language in the portion of 66-10 that relates to a vehicle. But they didn't do that. What do you base that on? Well, what reason would they have then if they had intended for – Because the legislature fully knows what the word concealed means. And, I mean, you know, you cited a number of cases. They talked about a concealed firearm. In fact, it's sort of ironic that years ago the offense was to have a concealed weapon on or about a person or in a vehicle. You cited a number of cases. They all interpreted what that meant. In terms of reasonable doubt, and so the legislature enacted a statute knowing full well the history of what it means for a concealed weapon to be on or about a person. And in all of those cases, concealed is an element and it means hidden. And so you're saying that the legislature didn't really understand or didn't mean to have that a gun in a car no longer has to be concealed. I don't believe that in those cases that the legislature did mean hidden. I mean, you cite them. They say that concealed means exactly what it means, hidden. Based on my reading of those cases, they were defining it based on – the critical issue in those cases, the defendant was arguing, you know, the weapon wasn't – it wasn't a concealed weapon because it wasn't on or about my person. I know that there's several cases and they actually say that one of the elements of that offense was that the weapon had to be concealed and concealed means hidden. So we have this enormous body of case law that the legislature was well aware of and knew exactly what the language meant when they used it. So they used it in context of a history of what concealed on or about a person means and it means hidden. It doesn't mean open. So I don't know how you can take a word out. You're asking us to take out the word concealed and say it doesn't really mean anything. Well, I mean, the word concealed, that only appears in 66-10. In 66-5, as I said, it very clearly does not apply that completely or mostly concealed from view to weapons that are carried within a vehicle. Well, why did they use the word concealed in a vehicle? I couldn't say, Your Honor. It could just have been an unfortunate drafting choice, but I think that when you look at the actual definition of a concealed firearm, it very clearly does not impose a requirement that it be – and as you said, the legislator was aware of the history of these cases and they made an informed – I believe that they made an informed decision here not to impose that requirement on weapons that are carried in a vehicle. And I think that's reflected in the definition. And it's also reflected in there's – I mean, as I mentioned in my brief, you know, the governor would have proposed an amendatory veto that would have actually changed the definition of a concealed firearm to conform with the position that the state is advancing. Well, I don't know if I agree with you. Why don't you read me what Governor Quinn wanted to include in the amendatory veto. Governor Quinn wanted to change the definition of a concealed firearm to a loaded or unloaded firearm carried on or about a person, completely covered or not visible from view of the public, or carried in a vehicle, concealed, covered, or not visible from the view of the public. And the legislator overrode that veto, and they have not amended the definition of a concealed firearm since then. So I think – Why would they need to add concealed when it's already in the statute? Well, Governor – the governor clearly believes that they did. And, I mean, if they – he believes that the – What the governor believed has really nothing to do with what the legislature knows. They had 30, 40, 50, 60 years of precedent using this exact same language, concealed on or about a person and what it means. And the legislature adopted the same language that the cases interpreting the same kind of language was. So I don't understand why they would add something when they have all this precedent that they recognized when they used that language, concealed. Well, I mean, I think that they – what the governor pointed out to them was that maybe – to his view that the definition was unclear. He was asking them to clarify, to state, you know, very clearly in the statute, when you have a gun in a car, it has to be covered. It has to not be visible from view of the public in order to be a concealed weapon. And the legislator, as I said, they chose not to go that route. They chose to override that veto. And so I think that if, you know, if the legislator had wanted for vehicle – for guns carried in vehicles to be completely concealed from view, they had a very clear opportunity with the governor's veto to adopt that language. And they – as I said, they chose not to do so. What does the meaning of transportation have to do with any of this? Under the unlawful use of weapons statute. I believe that just means that you are allowed to carry your concealed weapon with you in a vehicle. Does transport have the same meaning as carry? Or is it – is it transportation or what? What is the word? I'm not certain off the top of my head, Your Honor. So you don't think that has any significance here? Other than that it just clarifies that you are allowed to carry a concealed weapon in a vehicle. No, I don't, Your Honor. Well, don't you think that they chose a word that has a different meaning than carry? Well, I think it's just to emphasize the fact that you are allowed to, as I said, take the – take your weapon with you in – within your vehicle. You're allowed to do so if you have an FROID card. You're not allowed to do so if you don't have one. We can all agree on that, right? Correct. Okay. I'd like to go back to your probable cause argument for just a minute. Okay. So your argument, correct me if I'm wrong, is that the officers had no probable cause because they didn't have that extra knowledge of whether he had an FROID card or not, correct? A concealed carry license, but yes. But you know what I'm talking about. Yes. Okay. So is it your position that any time a police officer sees someone with a weapon, they have no probable cause to stop them because they do not know if they have a concealed carry license? Yes, unless there's – you know, unless, of course, there's some other circumstances indicating that there's no license. So any time there's a gun, that's it? Yes, I think that – So they have to – I'm assuming, under this argument, you would allow them to approach the man and ask him for his concealed carry license. Yes. Okay. But they wouldn't have probable cause to stop him at all? No, they would not have probable cause to effectuate an arrest in order to learn that information. Okay. And are there any cases that support that position? Yes. I mean, recently in People v. Thomas – Other than Mike Hyman's case. Other than those. Do you have any cases that support that? Would that – I mean, would that include People v. Thomas, the case that I cited to you in my supplementary brief? Who wrote it? I'm not certain who the – Okay. Is that the brand-new one? It – basically, in that case, the court did find that the police had probable cause, but they – at the end of their opinion, they – you know, they say that we wish to emphasize that under the current legal landscape, police cannot simply assume that a person who possesses a firearm outside the home is involved in criminal activity. They say we thus caution against an arrest first, determine licensure later method of police patrol. And so I think that it's clear from that decision and also other Illinois court decisions that, you know, just seeing someone on the street or seeing somebody in a car that has a gun, you know, unless they're – unless they're engaged in some other criminal activity, unless you – Do you think the circumstances of this extended the investigation period? The circumstances of the stop in this case? The circumstances of the angry crowd surrounding the police, and do you think that under those circumstances their investigation period was expanded? Possibly, but I would submit that at that point when this crowd started to gather, they had already been removed from the vehicle and placed in handcuffs. So I think the arrest had already been effectuated at that point. And so I don't think that that really necessarily has a bearing on the – So the officers under your theory have absolutely no right to remove them from the vehicle and handcuff them when they see the semi-automatic lock placed in the glove box? No, I mean, it would have been really a simple matter of just, you know, asking Ballard – While the crowd is surrounding them, the angry crowd is surrounding them, you want the officers to ask the defendant if he has an FOIA-deferred or a concealed carry license? Again, though, I don't think that the crowd, as they're being ordered out of the car, nobody testified that this crowd had gathered yet at this point. So I think it would have been a simple matter of, you know, as Ballard's stepping out of the car or as he testified being pulled out of the car, I think it would have been a rather simple matter of saying, hey, do you have a license for that gun, you know, that I saw you put in the glove box? And so I don't think that it would have necessarily – it wouldn't have been – we're not asking the officers to engage in any excessively burdensome activity. We're just asking them to, you know, before they make a decision that could potentially infringe upon somebody's, you know, constitutional right, that they make sure that they're doing that, you know, in the proper manner, in the manner prescribed by the UUW and AUW statutes and by the decisions of this court. Well, let me ask you this. Let's assume that he had a concealed carry permit. Okay? For purposes of our proceedings today, he has a permit. Is it still your position that under the Concealed Carry Act, an individual could say, be driving and have his left hand on the wheel and have his firearm right at his hip? I mean, yes, and there are circumstances. I'm not saying that you can just do whatever you want with it. Well, but how about the one I just gave you? You got the left hand on the wheel, and you got the gun sitting right to your side, and you're holding on to it. Is that okay? I mean, at that point, the officers might have probable cause based on the fact that – so in order to obtain a – Wait a minute. You said the officers might have probable cause because the person has their hand on the wheel, and they've got the gun on their side next to them? You're saying they might have had probable cause? Well, in order to – In our case, the one right in front of us, if you accept the officer's testimony, as we're supposed to do unless it's manifestly against the weight, the officer sees him with a gun, extended magazine, take it, and put it into a glove box. Correct. What's the difference between those scenarios? Well, in one scenario, the person is driving. Ballard was a passenger in this car. But what I would say is that if you're driving while holding a firearm – so in order to obtain a concealed carry license – But doesn't it matter about your personality? It is. It is. Yeah. But in order to obtain – It's not concealed, though, is it? Not as that term is used in everyday language. But in order to obtain a concealed carry license, you have to undergo training. And part of that training involves, you know, safely handling firearms. So if a police officer sees you and you're driving and you're holding a firearm at the same time – And doesn't that training actually tell you exactly what you can't do? You can't have an open gun in the car. You can't. Under the – you're basically saying that this provision means nothing. Which provision? Keep or carry a loaded or unloaded concealed firearm on or about the person within a vehicle. I'm not saying that it means nothing. I'm saying that it has to be read in conjunction with the definition in 66-5. It has to be read in conjunction with the governor's amendatory veto. It has to be read in conjunction – Doesn't the UUW statute have to be read in conjunction with the act? And it says that the exception only applies if the gun is carried or possessed in accordance with the act. So, I mean, really the issue here is are you allowed to have a gun and use it any way you want in a vehicle? No, I don't. And that's why I mentioned the concealed carry license training, because I believe that, you know, you could be committing – for one thing, if you're engaging in excessively reckless behavior, if you're waving a gun around, you could be committing various other criminal offenses, such as forms of reckless conduct. But I believe in that situation as well. If you're waving a gun around or if you're doing something unsafe with the gun in the car, the officers would have probable cause to believe at that point that you don't have a concealed carry license, because somebody who did have a concealed carry license would have had to have gone through training and would know not to engage in that kind of behavior. They would know that the purpose of this statute is not to give access to people to be using or handling guns while they're driving, while they're passengers. The sole purpose of the act is to permit transportation. And that's a completely different word than carry. And we don't – I don't think there's any way you can possibly say that Illinois is an open carry state in the car. There's just nothing here that would ever indicate a legislative intent to give gun owners who have a permit the right to use the gun in any way they wish in a car while they're either a driver or a passenger. I don't think that it does, no. It doesn't give them the right to use it in any way that they wish. As I said, they may have been committing – you know, depending on what the conduct they're engaging in, there may be other offenses that they're committing. And also I think that – But you can move it around. Under your interpretation of the act, you can take a gun, wherever it was, we're not really sure, but you can take it and you can move it to another location in the car. I mean, yes, Your Honor. And I think that it's supported, too. There's a provision of the Concealed Carry Act that says, say you go to a school or a government building. When you enter that building and you leave your car, you're then required to take your firearm and put it in a – you know, in some sort of concealed – in a case, basically, at that point. Which to me suggests that when you enter that parking lot and your gun wasn't in a case, you weren't committing any sort of – you weren't committing any sort of crime at that point. Okay, let's look at the act then. The exceptions, first of all, again, they say they don't apply to the – or affect transportation of weapons that meet the following conditions. One, it's broken down in a non-functioning state. Two, not immediately accessible. Three, are unloaded or enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a void card. So – and then four, are carried or possessed in accordance with the Firearm Concealed Carry Act. So what is the intent there when the legislature doesn't – it doesn't prohibit a gun that's broken down or non-functioning? It's harmless, right? Mm-hmm. Okay. And what about not immediately accessible? What does that mean? In other words, you couldn't take it out and wave it at someone or start shooting people on the street like a drive-by, right? Correct. Okay. So public safety. Yes. All right. Then unloaded, enclosed in a case, carrying in a box, a shipping box or other container by a person who's got a void card. What is that all about? Well, I think that's to differentiate and to say that somebody who possesses a concealed carry license possesses more rights to access their weapon than a person who carries – who's simply carrying a void card. Okay. But it doesn't have anything to do with the general overall purpose of keeping people safe and making sure that the public is safe from people having guns in the cars? I think that it does. I mean, obviously – because people who have – who obtain a concealed carry license, you know, have to undergo significant training, and so I think that the legislator made an informed choice there to say, well, no, these people have – they've gone through their training, they've proven that they're capable of handling firearms, and so we don't need to require them to have their gun be unloaded when they're in a car or to have them place it in a case when they're in a car. It's a decision to grant these people, you know, more rights, essentially. But it – and it doesn't have to be concealed. You took that word out, right? It has nothing to do with it anymore. A concealed firearm means – according to the definition, it means that it's on or about a person within a vehicle. It doesn't – my position, yes, is that it does not require that it be – and I don't think that – you know, in terms of public safety, I'm not really sure how the – I'm not really sure that the public safety question really turns on whether or not the gun is visible. I mean, so if you put a gun in a paper bag, it's no longer visible to somebody standing outside the car like Ferraris is, but that doesn't necessarily make it any safer. I don't think there's anything in the Concealed Carry Act that in any way suggests what you're suggesting, that it's okay to carry guns in bags. But let's move on to something else. There's a case called Pico v. Collier. Are you familiar with that? I am, Your Honor. Okay. How would you distinguish that case? Well, for one thing, in Collier, they specifically, you know, discuss how – are you asking about the question of arrest? No, I'm asking about how the court determined that it was reasonable for the officers to actually take measures to protect themselves because they observed ammunition in a vehicle at the time. Do you remember the facts of the case? The guy was parked in a parking lot? And there were bullets, and they continued to find more bullets as the – but I believe in Collier they determined that they were never under arrest, correct? No. Well, it was a terror case to begin with, but eventually he was arrested, and one of the issues on appeal was whether or not the totality of the circumstances supported what the court did in denying emotional distress. Yeah, correct. Also, I think it's important to note that, you know, Collier is a pre-Aguilar case. Well, actually, are you sure about that? Yeah, the facts of the case date back to 2006, I believe. Didn't they issue the opinion of petition for rehearing after Aguilar? I'm not certain, Your Honor. Well, I can tell you yes. It was issued after Aguilar.  And this case, do you think this case is governed by Aguilar? No, I think it's governed more closely by cases like People v. Thomas and even though, you know, they were held – and Horton and the other Thomas, and even though those cases obviously – I think the principle, though, that just seeing somebody in possession of a concealed weapon from those cases, I think that that's still good law. And in those cases and in the cases that the state – You've already said that concealed has nothing to do with this. You said that this is an open carry state when the gun's in the car. I mean, I think that it's – correct, Your Honor. My point is that the cases that the state cites to where somebody was seen in possession of a weapon and the court held that there was probable cause to arrest them based on seeing them in possession of the weapon, there were other circumstances. And almost – I think in all of the cases the state cites to, there was some – there was flight involved. People were fleeing the scene. We don't have any of that here. Don't we have a tracker stop? We do have a tracker stop. The officer sees the person with the gun and putting it into a glove box, the individuals in the car are asked to get out. About 10 people start surrounding the police. And the police officers feel – they actually had to call backup. And one of the individuals is found to have cannabis on his person. And then they take the whole situation into the police station. So you think that's improper? Yes, because at that point all that they knew was that my client was in possession of a concealed weapon. They didn't know that he was – You keep saying concealed, but there is no evidence that it was concealed. He took it and stuck it in a glove box. What is concealing about that? Except that maybe when you're putting it somewhere else, there's evidence that you're trying to hide something. I don't think that that is evidence that he was trying to hide anything. I think he was just acting in the safety of himself and of the officer as well. And, I mean, my position is, yes, my position is still based on the definition in 66-5 that this was a concealed firearm. I don't think that the legislator would have intended in this kind of situation. So he commits a crime because he's trying to – the officers have probable cause to arrest him because my client is trying to remove the firearm from his person and place it into a glove compartment where he – both he and the officer will be in a safer position. I don't think that the legislator could have intended that result. I don't – I – And that's the only – I just don't agree with you that Illinois and the legislature ever created open carry in vehicles. And that's basically your position. I just don't see that there's any other way to explain that second clause and the definition on or about a person. I don't think that there's any other way to explain the legislator's decision to reject the governor's mandatory veto. I don't think that there's any way – Either way. I mean, we just completely disagree. You think that we have open carry. You think that this statute is designed to let people do whatever they want with guns and cars. I think it's clearly the opposite. And I think you're – you've just taken out the entire section the legislature gave to someone who can have a carried, concealed gun. It says it has to be concealed within – concealed on or about the person within a vehicle. You're removing that language because you're focusing on a definition. But we read statutes together. Every single provision, we have to interpret it. We don't want absurd results. And a specific provision prevails over a more general provision. And so you're falling back on a definition, but you're ignoring the word concealed, and you're ignoring the rest of the language that has been interpreted for 40 years as meaning hidden. And you're saying it doesn't have to be hidden. And I don't see that you can get that out of the language, and I think you're asking us to take the language out and substituting your own. I'm not. I'm just asking you to look at – I think that if – so if you look at keep or carry a loaded or unloaded concealed firearm on or about his person within a vehicle, that's the section that you're referring to. That's the law. And if you plug in the – we have a definition of a concealed firearm. And if you plug in that definition there, you just – you get – it repeats itself. But what you get is on or about a person within a vehicle. The legislator has a definition of a concealed firearm. Concealed has a meaning. You're taking out the word concealed. Concealed has a meaning in everyday language, but it has a very specific meaning under this statute, under the Concealed Carry Act. And it means on or about a person within a vehicle. Well, you've completely thrown out 50 years of precedent. Concealed means hidden. You cited the cases. They're there for the taking. Every single one of them says what concealed means. They say it has – it applies and that it means hidden. And you're saying it's no longer hidden because of this other section that defines concealed. So you really can't take one little definition and say this is it. You have to read everything together. You have to read the word transportation. It's not about simply, you know, using vehicles to have a gun and drive around and do whatever you want with a gun. Thank you, Your Honor. Let me ask you this. Going into your other issue, because we're way past the time, but since you're the only case, I guess we'll just let it go. On your other issue, are you contending that the police officer who observed your client with the gun putting it into the glove compartment, that he didn't tell anybody about that? None of the police officers. I'm not contending. That's his testimony. He says that he didn't tell anybody, tell any of the other officers at the scene. He says that we have Rasks, one of the other officers. The scene was a chaos. How about when he was driving back to the station? Did he tell the other officers at that point? He told the officer that he was driving back to the station with that he saw a firearm at that point, but he did not tell the officer who was actually transporting the vehicle in which the firearm was contained that there was – he never told – Officer Edwards drove the van back to the station. He never told her as she was driving the van back to the station that there was, you know, he never said, hey, there's a firearm in that glove compartment there. Okay. And you think because of that the case should be reversed? I just think that there's – I mean, because of many factors, I think that it's impossible that he wouldn't tell the other officers at the scene. I think that you have Officer Edwards who is directly behind Officer Ferraris at the time that he allegedly sees my client place this gun into the glove compartment, and she says that she never saw a weapon. Was there fear for their life at this scene here? I mean, wasn't people coming out, and it was a harsh situation to say the least? I mean, and I would argue then that – well, Ferraris saw the gun before – allegedly saw this gun before the scene developed, and I would argue then that, you know, if the scene is becoming hostile or dangerous, it's more important to know that there's a firearm, that there's potentially a firearm in play here. So I'm not really sure I understand Officer Ferraris' testimony that he didn't tell his fellow officers because, you know, he was concerned for their safety. Aren't those all discrepancies for the trial court to resolve? How can we do that up here? The trial court did an assessment of credibility, and you're asking us to overrule that assessment. Are you not? Yes, I am, Your Honor. I think that if you look at the entire – if you look at – I do think that the trial court got it wrong based on the totality of the circumstances, based on the numerous aspects of Officer Ferraris' testimony that just plainly don't add up. So, yes, I am. All right. I'll save the rest of my time for rebuttal. Thank you. Good morning again, Your Honors, Mr. Bienak. Again, my name is David Iskowich with the Cook County State's Attorney's Office on behalf of the people. The defendant's proposed interpretation of concealed firearm can't be squared with other provisions of the Act, specifically subsection 6610C, which the court discussed with my opponent at length. The defendant's interpretation would effectively remove that word from that provision, which is the provision of the Act that empowers individuals to carry firearms on their person. The other provision that I believe the court should look at is subsection H, which specifically deals with the rights and responsibilities of police officers and licensees during investigatory vehicle stops. That provision provides that, upon request, a licensee in a vehicle must do two things. First, the licensee must tell the officer whether he is, in fact, carrying a concealed firearm. And second, the licensee must tell the officer where that firearm is, in fact, concealed, indicating that the legislature, in passing the Act, fully intended that firearms carried by licensees be, in fact, concealed within vehicles. Otherwise, it would not have specified that the obligations of licensees include informing officers whether they have them or where they're hidden. For if they were openly carried, that information would be unnecessary. Now, the... Some states don't even, it's not about upon request. Right. They say that a person has to tell the officer. Correct. Now, I know that in concealed carry training in Illinois, the instruction is to, part of the class is to instruct the potential licensees to inform the officer that they are a concealed carry licensee and are carrying. There's another provision, too, that requires that anyone who has a concealed carry, that owns a vehicle, that their concealed carry license permit has to be registered to the plate so that when an officer comes up upon a vehicle driven by someone, they can find out in advance if the driver has a concealed carry permit. That's right, Your Honor. That is, I believe I cited that particular statute. I can't tell you off the top of my head what it is, but it's in one of my footnotes. But it's obviously, you know, the entire regime here was crafted in response to the Seven Circuits holding in Moore v. Madigan that Illinois' firearms laws were unconstitutional in light of McDonald and Heller, and this legislation was on a timeline. It was given, I believe it was six months from the decision in Madigan v. Moore to come up with some kind of concealed carry legislation. Illinois was the last state in the Union to endorse any kind of carry. They resisted until they were literally instructed by the Seventh Circuit, you've got to do something here. Is there any difference in your interpretation of the definition of a concealed firearm versus opposing counsel? Sure, Your Honor. We think that when read within the context of the act, the entire act, and the legislature's intent, not to mention the absurd results principle, the only fair and common sense interpretation of that is that a firearm that's concealed within a concealed weapon within a vehicle must, in fact, be concealed or hidden from view. So you're reading it, and there are two ways to interpret the word or. And if you interpret or here according to your position, then concealed or mostly concealed from the view of the public, it applies to about a person within a vehicle. That's our interpretation, Your Honor. And there's case law that actually says that or can be different things. Yes, that's true, Your Honor. So you're saying that that phrase modifies everything in the sentence. Right. I think that there might be even an easier way to resolve this is by going to the legislative record and seeing, asking. What was the intent? Well, the intent was to provide a Second Amendment right for concealed carry with the conditions that the legislature thought would be best applied. So officer safety is certainly a concern, as we can see by subsection H. The right to carry in a vehicle is endorsed, but with the condition that the weapon be hidden. Carrying on the public way is endorsed and approved with the condition that it be mostly or entirely hidden from public view. And I think that subsection H is really telling in this regard because it reflects both. It balances the rights of an individual to carry a firearm in a vehicle with the safety concerns that are contingent on any investigatory vehicle stop when an officer approaches. Well, was this statute designed for a specific purpose? In other words, for individuals who have permits to be able to transport weapons, or was it designed to have an open carry? Well, I believe that when we speak of transporting weapons, that can be undertaken without a concealed carry license as long as the weapon is cased, inaccessible, and unloaded. That would be a FOIA question. If you're carrying a firearm in your truck, for instance, and you have a FOIA. Well, you can transport a gun that is in a broken-down state. Of course. But there's absolutely, well, the legislature provided for that because there's no danger to the public. Correct, correct.  Well, you're interpreting the definition to mean that concealed has to do with not only walking down the street, but it must be concealed in a vehicle as well. Correct. In other words, it shouldn't be something that can be viewed by the public. Right, and it's the only real way to read the statute that makes any sense. What about all these cases that the legislature had to be aware of defining carrying a concealed weapon when it used to be a crime to carry a concealed weapon in a vehicle? The courts always interpreted that to mean that concealed means hidden. Hidden. And so they adopted the exact same language only in allowing for carrying a concealed weapon on or about a person within a vehicle. The interpretation is all over the cases that the courts cited. So are we supposed to say that the legislature didn't know what they meant when they came up with the exact same language for what used to be a previous offense? No, the answer is no. And why not? We presume that the legislature is aware of that precedent and, moving forward, kept the same meaning for the same words. I mean, if they wanted a different meaning, don't you think they would have spelled it out so that there wouldn't be any suggestion that the legislature knew what they meant when they used the exact same language that had been interpreted for, you know, 50, 60, 70 years that concealed means hidden? Right. And I think that they didn't add or subtract, they didn't add any conditions to that language. And so we have to look at this in the most common sense manner in light of the entire statute as a whole, as Your Honors talked about, and in terms of the results that would obtain if the defendant's position were correct. And I outlined just a couple of examples in my brief about how this would be an absurd and dangerous result to read the statute as the defendant prefers. Open carrying vehicles would allow a licensee to carry by storing it on the dash, storing it on the rear console, sitting it on the seat with children in the vehicle in the back seat perhaps, steering with it in your hand like this, not point it up but point it up. This can't be what the General Assembly intended, especially considering that it was so resistant to any sort of carrying legislation up until the point it was forced to do so by the Seventh Circuit. With respect, if the Court has no other questions on the UUW aspect, just to wrap that up and bring it home, the argument in the briefs was whether counsel was in effect for failing to move to quash arrest and suppress evidence. And one of our arguments in response was that any objective viewer could see that the defendant was committing a UUW in the vehicle because he was openly carrying. Whether or not he had a CCL didn't matter. You can have a CCL and still violate the UUW statute by openly carrying in a vehicle, which is our position. Upon seeing that, there was probable cause to take him into custody. And because any motion to suppress would have been futile on that basis, counsel could not have been ineffective. We also did discuss briefly the, not briefly, in Part 2 of our argument, the Court had some questions about the sufficiency of the evidence. This is a classic case of a swearing contest at the trier fact. Sitting here, Judge O'Brien viewed, she was on the spot, viewed the witnesses, their demeanor. This isn't the kind of case that should draw too much scrutiny from the reviewing court with respect to the result of the guilty verdict. Any discrepancies or any questionable testimony by Officer Ferreris was addressed, was cross-examined, and was considered by the trial judge in making her decision. And the judge actually did make an express finding that she found that the defendant was not credible, especially with respect to his testimony that he and his comrades were handcuffed behind the car while Officer Edwards conducted a search and watched them simultaneously. She found that simply didn't make sense, that Officer Ferreris' decision to proceed as he did was really the only one he was, the only one he could do with any safety because of the converging crowd and the escalating situation, the fact that there was a firearm and somebody had cannabis. So under the circumstances, the proof was certainly adequate and sufficient to uphold the verdict. And we ask that this Court, for those reasons, affirm the judgment.  Thank you. In regard to the investigation, you know, the provision that says that you, upon being asked, have to inform an officer that you are in possession of a concealed firearm, I don't think that it really necessarily, that counsel's conclusion necessarily really follows from that provision. Under my reading of the Concealed Firearm Act, you know, it's possible, I'm not saying that a firearm, you know, has to be out in the open. It's possible that a concealed firearm would not be visible to the officer. It just doesn't have to be. And so I think that that provision was included for situations in which the firearm is not visible to the officer. But I don't think that it necessarily follows from that, that it has to be not visible from the view of the officer. What about the dashboard example? Well, I mean, I think that when you look at honor about a person, I mean, I think that if you have a gun that's on the dashboard, you know, you could make an argument there that it's not readily accessible to you, that it's not, that you can't access it. It's not honor about the person. It's not honor about the person. And so in that case, it would not necessarily be a concealed firearm. And is there any way that you believe that the word or in the definition could be interpreted, as I said, that the legislature clearly intended that you would read it as loaded or unloaded, carried on or about a person from view of the public or about a person in a vehicle? I just, I don't think that that's a very natural reading of the statute. Well, why would you take that definition with the act that only allows you to have it concealed? The person, 66. I mean, reading them together. Yeah. If you read that definition with the other provision, then it comes out that we don't have over-carrying. Well, but I think if you read it with the other provision, there's the first part of that provision, which applies to people on the street, that 66-10-C, that part of the provision that applies to people on the street. And in that provision, they say that it has to be completely or mostly concealed from view of the public. That portion of that language, completely or mostly concealed from view of the public, is not included in the second portion of that definition. And so I think that when you consider that fact, I think that my understanding of the use of the word or in 66-5 and that definition laid out there, I don't think that they're, I think that they work together with 66-10. And then I just have one last question about the whole idea of concealed firearms. Why would the legislature want to have concealed firearms on the street but not in cars? Well, I think it's just because when you're in a car, you're already concealed. I mean, you're concealed within the car. So it's not the case that, you know, if a gun is on your lap or something like that, it's not the same thing as walking down the street holding a gun in your hand. I think it's just to reflect the fact that there are two different universes. And the universe of a vehicle that suggests that vehicles are a little different. I think the fact that the statute, for the purposes of the Concealed Carry Act, I think that the fact that it differentiates at numerous, numerous occasions between on the street and in a vehicle suggests that, yes, in terms of the Concealed Carry Act, vehicles are different. Even though the cases in the Illinois Supreme Court in Collier suggested how difficult and dangerous it is for police officers approaching cops? They did suggest that in Collier, but as I've said, there's others. Why is that? Why is it dangerous? Well, I mean, I think that, I mean, the potential that, you know, obviously the potential for some sort of armed violence occurring. And, you know, and so Collier does discuss that, but as I said, there's numerous other decisions that say that when you see somebody with a gun, you know, obviously I'm not discounting, you know, the officer's fear for their safety, but there's the case law in Illinois says that you have to determine first whether they are in legal possession of that firearm. And I would just like to note briefly that, you know, in the cases that I cited, you know, these older cases interpreting on or about a person, you know, in People v. Cosby, one of the cases I cited, you know, they said that the firearm that was found underneath a leather coat next to where the defendant had been seated in his car was on or about the defendant's person. I just don't think that it really makes sense for these kind of cases to really turn on the fact that it's underneath a leather coat, so it's not visible from view of the public. I don't think that the legislator really intended for that to be the operative concern here. And in People v. Woodworth, the gun was found partially protruding out from underneath the defendant's seat. So, you know, if somebody's walking by, they could have seen that gun. And so I just don't think that based on the case law, based on the definition, I just don't think that the focus is on whether or not it's visible to view of the public from somebody standing outside of the vehicle. And if Your Honors have no further questions, that's all I have. Thank you. Well, I want to thank you guys for giving us a very interesting case, and we'll have to put this to rest, this issue, once and for all, hopefully. And you'll have a decision from us shortly. Court is adjourned.